UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LOPEZ,<br><br>   Plaintiff,<br><br> v.<br><br>M. LEE, et al.,<br><br>   Defendants. | Case No. 23-cv-03660-HSG<br><br>**ORDER GRANTING MOTION TO WITHDRAW AS ATTORNEY; DENYING REQUEST FOR ENTRY OF DEFAULT JUDGMENT; DENYING AS MOOT REQUEST FOR SERVICE; DENYING REQUEST TO STRIKE DKT. NO. 36**<br><br>Re: Dkt. Nos. 23, 26, 29, 37, 41 |

Plaintiff, an inmate currently housed at San Quentin State Prison has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 regarding events that occurred at Pelican Bay State Prison ("PBSP") while he was housed there. This order addresses: (1) Deputy Attorney General ("DAG") Ruhparwar's request to withdraw as counsel, Dkt. No. 23; and (2) Plaintiff's requests related to entering default judgment against defendant Cross, Dkt. Nos. 26-31, 37, 41.

**FACTUAL BACKGROUND**

**I. Relevant CDCR Procedures Governing Legal Representation of Staff Members**

As part of CDCR's employment process, it is CDCR's routine and practice to ask staff members if they consent to being served with complaints through CDCR if the complaint pertains to actions they performed in the course of their employment with CDCR. The staff member's consent or declination is saved by CDCR. Dkt. No. 55-4 at 2.

To facilitate the service of *pro se* complaints upon CDCR and its employees, CDCR participates in an e-service program that operates as follows. When the Court issues an order of service, the Court's Clerk serves CDCR via email with a form titled "CDCR Report of E-Service Waiver." This form lists all staff members that were named as defendants and provides CDCR

with the operative complaint, the corresponding order of service, and the summons. CDCR has forty (40) calendar days to confirm through their database if the staff member who was named as a defendant provided the consent to be served with a complaint through CDCR. CDCR subsequently completes and returns the Report of E-Service Waiver to the Clerk, stating if the staff member consented or declined to be served through CDCR. Unless there is a conflict of interest, the Attorney General's Office generally represents CDCR staff in lawsuits brought under the Prison Litigation Reform Act. Before the Attorney General's Office can accept service on behalf of the defendant, they must obtain either a verbal or written request for representation from the defendant. Dkt. No. 55-4 at 2.

## II. Defendant Cross

On July 2022, defendant Cross stopped working for CDCR. Dkt. No. 55-1 at 1.

On June 14, 2024, the Court screened the complaint and found that it stated cognizable First Amendment retaliation claims against PBSP correctional officials Cupp, Hammer, Cross, Lee, Brewer, and Davis, and dismissed the remaining claims and defendants. *See generally* Dkt. No. 23. The Court ordered service on defendants Cupp, Hammer, Cross, Lee, Brewer, and Davis. Dkt. No. 23 at 8.

On June 28, 2024, CDCR timely returned its Report of E-Service Waiver to the Clerk, and stated that defendant Cross consented to be served through CDCR. Dkt. No. 55-4 at 2.

On July 12, 2024, PBSP office technician A. McCovey contacted defendant Cross by phone, and informed him that Plaintiff had filed a lawsuit against him. McCovey asked defendant Cross if he would like the Attorney General's Office to represent him. Defendant Cross confirmed that he wished to be represented by the Attorney General's Office. McCovey explained that he would forward a copy of Plaintiff's complaint and a request for representation for him to sign. Defendant Cross gave McCovey his email address. That same day, McCovey sent defendant Cross a copy of the complaint and a request for representation for his signature. McCovey requested that defendant Cross return the signed request to him. Defendant Cross did not respond to this email. That same day, McCovey informed the California Attorney General's Office that defendant Cross wished to be represented by it. Dkt. No. 23-1 at 2; Dkt. No. 55-1 at 2. Pursuant

to this request, the Attorney General's Office was authorized to accept service on behalf of defendant Cross. Dkt. No. 55-4 at 2.

On July 16, 2024, Defendants, including defendant Cross, through counsel Deputy Attorney General ("DAG") Ruhparwar, filed a waiver of reply and demand for jury trial, Dkt. No. 14; and waived service of summons, Dkt. No. 15.

On July 19, 2024, DAG Ruhparwar asked PBSP's litigation coordinator to coordinate a call with defendant Cross to discuss the case and Plaintiff's discovery requests. Dkt. No. 23-1 at 2.

On July 22, 2024, PBSP litigation coordinator Rush called defendant Cross. Defendant Cross did not answer so Rush left a voicemail, asking defendant Cross to give him a call back. Defendant Cross did not return Rush's call. Dkt. No. 55-2 at 2. That same day, Rush informed DAG Ruhparwar that he had left a voicemail for defendant Cross, but defendant Cross had not responded. Rush suggested that DAG Ruhparwar call defendant Cross directly. Rush gave DAG Ruhparwar defendant Cross' phone number. DAG Ruhparwar called defendant Cross that day at the number provided and left a voicemail. In the voicemail, she introduced herself, told him that she needed to discuss the case and Plaintiff's discovery requests, and asked defendant Cross to get back to her within a week. Defendant Cross did not call back. Dkt. No. 23-1 at 2; Dkt. No. 55-1 at 2.

At the beginning of August 2024, DAG Ruhparwar called defendant Cross again. Defendant Cross did not answer and DAG Ruhparwar left another voicemail. In the voicemail, DAG Ruhparwar informed defendant Cross that she required his assistance to respond to discovery requests due September 16th; and that if he did not respond, she would have to withdraw from representing him. Defendant Cross again did not respond. Dkt. No. 23-1 at 2; Dkt. No. 55-1 at 2.

On August 5, 2024, PBSP office technician McCovey emailed defendant Cross for the second time, and again provided him with a copy of the operative complaint and the request for representation. Defendant Cross did not respond to this email. That same day, McCovey obtained defendant Cross' mailing address from the PBSP personnel office and sent defendant Cross hard

copies of the operative complaint and the request for representation. The mailing was returned to PBSP by the United States Postal Service with a label stating "Return to Sender; Attempted – not known; unable to forward." Dkt. No. 55-3 at 2.

On September 11, 2024, DAG Ruhparwar filed a motion requesting to withdraw as counsel for defendant Cross. Dkt. No. 23.

On December 6, 2024, the Court ordered DAG Ruhparwar to file a supplemental brief addressing the following issues: (1) the steps taken by DAG Ruhparwar, the California Attorney General's Office, the California Department of Corrections and Rehabilitations ("CDCR"), and any other relevant entity to determine defendant Cross' address or other contact information, and explaining why the address of a former employee is unavailable to the CDCR; (2) the California Attorney General's Office's legal basis for accepting service on behalf of defendant Cross, given DAG Ruhparwar's statement that she has never communicated directly with defendant Cross; and (3) the steps DAG Ruhparwar has taken to given Plaintiff notice of her intent to withdraw as his attorney and the potential consequences of the withdrawal of representation. ECF No. 54.

On December 10, 2024, DAG Ruhparwar learned from PBSP's personnel office that it had another address for defendant Cross. Dkt. No. 55-1 at 2.

On December 11, 2024, DAG Ruhparwar called defendant Cross again. Defendant Cross did not answer and DAG Ruhparwar left another voicemail. In the voicemail, DAG Ruhparwar informed Plaintiff that she had moved to withdraw from representing him because he had not returned her prior calls, and said that if the Court granted the motion for withdrawal, his rights might be adversely impacted, he would have to retain a new attorney, and CDCR would not pay for a new attorney. She provided her phone number again. Dkt. No. 55-1 at 2.

On December 12, 2024, DAG Ruhparwar sent a letter to defendant Cross's other address. In the letter, DAG Ruhparwar stated that she had left defendant Cross three voicemails, that he had never returned her calls, and that she would have to move to withdraw from representing him. She again informed defendant Cross that if the Court granted the motion for withdrawal, his rights might be adversely impacted, he would have to retain a new attorney, and CDCR would not pay for a new attorney. Dkt. No. 55-1 at 2.

1    On December 13, 2024, DAG Ruhparwar had a video meeting with PBSP's personnel specialist, who confirmed that the two addresses that she had received from PBSP were defendant Cross's most recent addresses on file with PBSP.  Dkt. No. 55-1 at 2.

On December 20, 2024, DAG Ruhparwar timely filed the supplemental briefing requested by the Court.  Dkt. No. 55.

## DISCUSSION

### I.   Request to Withdraw as Counsel for Defendant Cross (Dkt. No. 23)

DAG Ruhparwar has requested that she and the California Attorney General's Office be allowed to withdraw as counsel for defendant Cross because (1) defendant Cross has never directly contacted the Attorney General's Office; (2) defendant Cross has not responded to DAG Ruhparwar's calls, voicemails, or letter; and (3) DAG Ruhparwar and the Attorney General's Office are unable to contact defendant Cross.  Dkt. No. 23.  In an August 2024 voicemail, a December 11, 2024 voicemail and a December 12, 2024 letter, DAG Ruhparwar gave defendant Cross notice of her intent to withdraw.  In the December 11, 2024 voicemail and the December 12, 2024 letter, DAG Ruhparwar also gave defendant Cross notice of the potential consequences of the withdrawal of representation.  Dkt. No. 55 at 4-5.

The decision to grant or deny a motion to withdraw as counsel is committed to the sound discretion of the trial court.  *See United States v. Carter*, 560 F.3d 1107, 1113 (9th Cir. 2009).  In ruling on motions to withdraw, courts have considered, among other things, (1) the reasons withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal may cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case.  *Quintero v. Wells Fargo Bank, N.A.*, No. 13-CV-04937-JSC, 2015 WL 13427800, at *1 (N.D. Cal. Jan. 6, 2015).  "In this district, the conduct of counsel, including withdrawal of counsel, is governed by the standards of professional conduct required of members of the State Bar of California."  *Cal. Native Plant Soc. v. E.P.A.*, C No. 06-cv-3604-PJH, 2008 WL 4911162, *1 (N.D. Cal. Nov. 14, 2008).  Cal. R. Prof. Conduct 3-700(C)(1)(d) provides that an attorney may request permission to withdraw if the client's "conduct renders it unreasonably difficult for the member to carry out the employment effectively."  Cal. R. Prof.

5

1   Conduct 3-700(C)(1)(d).

2     The Court finds that defendant Cross's complete refusal to communicate with DAG Ruhparwar and the California Attorney General's Office provides good cause for their withdrawal as counsel.  *See, e.g., Acosta v. Frito-Lay, Inc.*, No. 15-CV-02128-JSC, 2015 WL 13757911, at *1 (N.D. Cal. Nov. 23, 2015) (granting counsel leave to withdraw where client had failed to respond to counsel's numerous calls, voicemails, and certified mail and generally failed to cooperate with counsel); *U.A. Local 342 Joint Labor-Mgmt. Comm. v. So. City Refrigeration, Inc.*, No. C-09-3219 JCS, 2010 WL 1293522, at *3 (N.D. Cal. Mar. 31, 2010) (defendant's failure to pay fees and costs due under engagement agreement and failure to cooperate or communicate effectively with counsel constituted good cause to grant counsel leave to withdraw).  The Court further finds that DAG Ruhparwar has provided defendant Cross with the notice required by N.D. Cal. Civ. L.R. 11-5(a) in her December 12, 2024 letter, and that she took reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client by leaving him a voicemail and sending him a letter explaining the potential consequences of the withdrawal of representation.  N.D. Cal. Civ. L.R. 11-5(a) ("Counsel may not withdraw from an action until relieved by order of the Court after written notice has been given reasonably in advance to the client and to all other parties who have appeared in the case."); Cal. R. Prof. Conduct 3-700(A)(1) ("A member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700(D), and complying with applicable laws and rules.").  The Court therefore GRANTS Deputy General Ruhparwar's request, filed on behalf of herself and on behalf of the California Attorney General's Office, to withdraw as counsel for defendant Cross.

## II.   Plaintiff's Default Judgment Related Requests (Dkt. Nos. 26-31, 37, 41)

  Plaintiff has filed the following motions related to requesting entry of default judgment against defendant Cross.  Plaintiff has requested that the Clerk of Court enter default judgment against defendant Cross in the amount of $3,000, plus interest and costs because default has been entered against defendant Cross for failure to appear; and Plaintiff has filed declarations stating

that default has been entered against defendant Cross for failure to appear and that defendant Cross is not in military service.  Dkt. No. 26 ("Request for Entry of Default Judgment"); Dkt. No. 27 ("Declaration in Support of Request for Default Judgment"); Dkt. No. 28 ("Notice of Motion for Default Judgment"); Dkt. No. 29 ("Motion for Default Judgment"); Dkt. No. 31 ("Declaration as to Military Service").

Defendants oppose the requests for entry of default judgment, arguing that defendant Cross has not failed to plead or defend himself in this case, as is required by Fed. R. Civ. P. 55(a) for entry of default, because defendant Cross timely filed and served his waiver of reply on July 16, 2024, and served objections to Plaintiff's discovery requests that same day.  Dkt. No. 36.

Plaintiff requests that the Court strike Dkt. No. 36, arguing that DAG Ruhparwar cannot speak on behalf of defendant Cross as she has filed a motion on behalf of herself and the California Attorney General's Office to withdraw as counsel for defendant Cross and has acknowledged that she has never spoken with defendant Cross.  Plaintiff further argues that default judgment should be entered against defendant Cross because DAG Ruhparwar's representation that she has never spoken to defendant Cross indicates that defendant Cross's pleadings in this action cannot constitute pleading or defending in this action, as they were submitted on defendant Cross' behalf without his knowledge or input.  Dkt. No. 41.

The Court DENIES Plaintiff's requests for entry of default judgment against defendant Cross, Dkt. Nos. 26-31, because default has not been entered against defendant Cross.  Entry of default is a prerequisite to the entry of default judgment.  The process for obtaining entry of default and default judgment under Rule 55 is a two-step process: (1) seeking entry of default from the clerk of the court and (2) filing a motion for default judgment before the district court.  Fed. R. Civ. P. 55; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (recognizing "two-step process" required by Rule 55); *see also Symantec Corp. v. Global Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) (discussing difference between entry of default and default judgment).  When the Clerk of the Court has not entered default against a defendant, a motion for default judgment against that defendant is improper.  *Ardalan v. McHugh*, No. 13-CV-01138-LHK, 2013 WL 6212710, at *23 (N.D. Cal. Nov. 27, 2013); *see also e.g., Marty v. Green*, No. 2:10-CV-01823 KJM KJN PS, 2011

1  WL 320303, at *3 (E.D. Cal. Jan. 28, 2011) (denying motion for default judgment because
2  plaintiff failed to first seek clerk's entry of default from Clerk of Court); *Norman v. Small*, No. 09-
3  cv-2235 WQH NLS, 2010 WL 5173683, at *2 (S.D. Cal. Dec. 14, 2010) (denying default
4  judgment because sssclerk had not entered default). The Clerk of the Court has not entered default
5  as to defendant Cross, and therefore Plaintiff's motion for default judgment is improper. *See*
6  *Ardalan*, 2013 WL 6212710, at *23.

7  The Court DENIES Plaintiff's request to strike Dkt. No. 36. Dkt. No. 41. Plaintiff argues
8  that the Court should strike Dkt. No. 36 because DAG Ruhparwar cannot file pleadings on behalf
9  of defendant Cross as she has been unable to contact him. Fed. R. Civ. P. 12(f) provides that the
10 Court may strike from a pleading an insufficient defense or any redundant, immaterial,
11 impertinent, or scandalous matter.

> "Immaterial" means that the matter has no essential or important relationship to the claim for relief or the defenses being pled. "Impertinent" matter includes statements that are not necessary to the issues in question. "Scandalous" includes allegations that cast a cruelly derogatory light on a party or other person. [T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." . . . "A federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.

17 *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1143–44 (S.D. Cal. 2018).
18 Plaintiff has not demonstrated that Dkt. No. 36 is redundant, immaterial, impertinent, or
19 scandalous. Moreover, DAG Ruhparwar properly opposed the motion for entry of default
20 judgment against defendant Cross in Dkt. No. 36. On the date that Dkt. No. 36 was filed
21 (September 23, 2025), DAG Ruhparwar was counsel for defendant Cross and therefore ethically
22 required to defend on behalf of defendant Cross. Dkt. No. 36 sets forth legal arguments as to why
23 entry of default judgment should not be entered against defendant Cross based on the record
24 before the Court. Dkt. No. 36 does not make any arguments or allegations that falsely imply that
25 DAG Ruhparwar has been in communication with defendant Cross. The Court therefore DENIES
26 Plaintiff's motion to strike Dkt. No. 36.

27 In light of the Court's denial of Plaintiff's request for entry of default judgment, the Court
28 DENIES as moot Plaintiff's request that the United States Marshal's Service locate and serve

defendant Cross with notice of the entry of default judgment. Dkt. No. 37.

## CONCLUSION

For the reasons set forth above, the Court ORDERS as follows.

1. The Court GRANTS Deputy General Ruhparwar's request to withdraw as counsel for defendant Cross on behalf of herself and on behalf of the California Attorney General's Office. Dkt. No. 23.

2. The Court DENIES Plaintiff's requests for entry of default and default judgment against defendant Cross. Dkt. Nos. 26, 29. The Court DENIES as moot Plaintiff's request for the Court to serve defendant Cross with the notice of entry of default and notice of default judgment. Dkt. No. 37. The Court DENIES Plaintiff's request to strike Dkt. No. 36. Dkt. No. 41.

This order terminates Dkt. Nos. 23, 26, 29, 37, 41.

**IT IS SO ORDERED.**

Dated: 7/15/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge